# In the United States Court of Federal Claims

No. 18-1339C

(E-Filed: January 9, 2019)[1]

| | | |
|---|---|---|
| INVERNESS TECHNOLOGIES, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| THE UNITED STATES, | ) ) | Post-Award Bid Protest; Corrective Action in Response to GAO Protest; |
| Defendant, | ) ) | Solicitation Cancellation. |
| and | ) ) | |
| GBX CONSULTANTS, INC., | ) ) | |
| Intervenor-defendant. | ) ) | |

Craig A. Holman, Washington, DC, for plaintiff.  Dana E. Koffman, Craig A. Schwartz, and John J. O'Brien, of counsel.

Domenique Kirchner, Trial Attorney, with whom appeared Joseph H. Hunt, Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Deborah A. Bynum, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  Savannah Wilson, United States Department of Labor, of counsel.

Julie M. Nichols, Washington, DC, for intervenor-defendant.  James S. Phillips, of counsel.

---

[1] This opinion was issued under seal on December 20, 2018.  The parties were invited to identify source selection, proprietary or confidential material subject to deletion on the basis that the material was protected/privileged.  No redactions were proposed by the parties.  Thus, the sealed and public versions of this opinion are identical, except for the publication date and this footnote.

OPINION

CAMPBELL-SMITH, Judge.

Plaintiff is a service-disabled, veteran-owned small business that filed the instant bid protest to challenge the agency's corrective action decision and its decision to cancel the solicitation at issue.  See ECF No. 1 (plaintiff's complaint).  Before the court are the administrative record, ECF No. 20; a supplement to the administrative record, ECF No. 29; and the parties' cross-motions for judgment on the administrative record, brought pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims (RCFC).  The court deemed oral argument unnecessary.

The parties' motions for judgment on the administrative record and supplemental briefs consist of the following:  (1) plaintiff's motion for judgment on the administrative record, ECF No. 30; (2) defendant's cross-motion for judgment on the administrative record, ECF No. 36; (3) intervenor-defendant's cross-motion for judgment on the administrative record, ECF No. 39; (4) plaintiff's opposition to the cross-motions and reply in support of its motion for judgment on the administrative record, ECF No. 42; (5) defendant's reply in support of its cross-motion for judgment on the administrative record, ECF No. 46; (6) intervenor-defendant's reply in support of its cross-motion for judgment on the administrative record, ECF No. 47; (7) intervenor-defendant's supplemental brief, ECF No. 54; (8) defendant's supplemental brief, ECF No. 55; (9) plaintiff's supplemental brief, ECF No. 56; (10) plaintiff's supplemental response, ECF No. 57; and, (11) defendant's supplemental response, ECF No. 58.  Additionally, defendant filed by leave of the court a copy of the new contract issued by the Department of Labor on September 26, 2018, which relates to this matter.  See ECF No. 50.

For the following reasons, plaintiff's motion for judgment on the administrative record, ECF No. 30, is **DENIED**; defendant's cross-motion for judgment on the administrative record, ECF No. 36, is **GRANTED**; and, intervenor-defendant's cross-motion for judgment on the administrative record, ECF No. 39, is **GRANTED**.

I.  Background

The Department of Labor (DOL) provides transition programs that offer "to veterans and their spouses workshops that focus on career exploration, job search strategies, resume and cover letter preparation, interview skills, salary negotiation, and small business assistance."  ECF No. 30-2 at 16 (citing ECF No. 20-3 at 402).  These services are provided pursuant to the Transition Assistance Program (TAP), and are mandated by statute.  See 10 U.S.C. § 1144 (2012) (titled "Employment assistance, job training assistance, and other transitional services:  Department of Labor"); 38 U.S.C. § 4113 (2012) (titled "Transition Assistance Program personnel").  The Veterans'

2

Employment and Training Service (VETS) is the DOL sub-agency that provides TAP services. See ECF No. 36 at 12.

Plaintiff is a service-disabled, veteran-owned small business that has been providing transition services, as either a prime contractor or subcontractor, to veterans for more than a decade. See ECF No. 1. Plaintiff began providing such services in 2006 under a contract that expired in 2012. See ECF No. 30-2 at 16. When the solicitation for the new contract was issued, plaintiff chose to participate as a subcontractor to GBX Consultants, Inc., intervenor-defendant in this matter. See id. In August 2012, the DOL awarded the contract to GBX, which provided for "one year of services, with DOL having the ability to exercise four successive option years." See id. at 16 (citing ECF No. 20-3 at 251). The DOL, in fact, exercised all four options years, and the contract expired on September 27, 2017. See id. at 17 & n.1 (citing ECF No. 20-3 at 251 and ECF No. 20-6 at 502-39). The contract required that all services ordered thereunder be delivered on or before September 27, 2018. See ECF No. 20-3 at 274.

The DOL issued a new solicitation, Solicitation 1605DC-18-R-00003, which is the subject of this protest action, on November 3, 2017. See ECF No. 30-2 at 17 (citing ECF No. 20-3 at 356). The solicitation contemplated the award of an indefinite delivery indefinite quantity (IDIQ) contract for the provision of transition services similar to those provided by GBX under the 2012 contract. See id. (citing ECF No. 20-3 at 402). Specifically, the services sought by the solicitation included both "domestic and overseas TAP DOL Employment Workshop ("DOLEW") and Career Technical Training Track ("CTTT") workshops." Id. (citing ECF No. 20-3 at 402).

After evaluating the technical and price proposals from all offerors, the DOL awarded the contract to plaintiff on March 5, 2018. See ECF No. 30-2 at 18; ECF No. 20-5 at 721. Two unsuccessful offerors then filed protest actions before the Government Accountability Office (GAO). See ECF No. 30-2 at 18; ECF No. 20-5 at 834-1215; ECF No. 20-6 at 1-170. On March 30, 2018, the DOL responded to the GAO protests with a decision to take corrective action. The DOL informed the GAO as follows:

> Please be advised the [DOL] will take corrective action regarding the above-referenced protest. In implementing its corrective action, DOL intends to reexamine the record of this procurement and issue a new award decision. That decision may result in the selection of a new awardee or the reaffirmation of the original award decision. In either case, the original award decision that is the subject of this protest is void and will be superseded by any new decision. As a result, DOL's corrective action will render the pending protest moot. In the event that the new source selection decision results in an award to another offeror, DOL agrees to cancel the contract to Inverness Technologies, Inc., and will make a new contract award to that entity. Performance of the challenged contract to Inverness Technologies,

>Inc. has been stayed and will remain suspended until a new award decision is finalized.

ECF No. 20-6 at 176. The GAO then dismissed the protest actions as academic. See ECF No. 20-6 at 178-79.

The DOL began conducting corrective action, but cancelled the solicitation on August 23, 2018, before issuing a new award decision. See ECF No. 30-2 at 21; ECF No. 20-6 at 469-494. The contracting officer produced an eight-page memorandum in which she explains the basis for her cancellation decision. See ECF No. 20-6 at 469-76. In the opening paragraph, she states:

>I have determined that it is in the Government's best interest to cancel [the solicitation] in light of changed requirements. Specifically, a new statute significantly alters VETS' obligations under the Transition Assistance Program. The legislation requires DOL to revise substantially the TAP services it seeks with this procurement. The revised TAP services were not those anticipated at the time the Solicitation was issued and which were described in the Solicitation's Performance Work Statement. In order to comply with the statute's requirement that the new program be in place within twelve months, VETS must move quickly to develop requirement documents for a new solicitation that reflect[] the Department's changed requirements.

Id. at 469. She also noted that her decision was in part based on problems with the solicitation brought to light by the pending GAO protests. See id. at 475.

The memorandum describes the solicitation's requirements, details the acquisition timeline, outlines the pertinent changes made by the John S. McCain National Defense Authorization Act for Fiscal Year 2019, Pub. L. 115-232, 132 Stat. 1636 (Aug. 13, 2018) (2019 NDAA), explains the reasoning behind her cancellation decision, and sets forth a general approach for a new acquisition plan. See id. at 469-76. Because the sufficiency of the contracting officer's explanation is at issue here, the court will reproduce the section of her memorandum titled "Contracting Officer's Decision to Cancel Solicitation 1605DC-18-R-00003 and Initiate a New Procurement Based on the Changed Requirements," in its entirety. The section reads, as follows:

>After careful consideration of the new statutory requirements for the Transition Assistance Program, I have determined that it is in the Government's best interest to cancel the Solicitation 1605DC-18-R-00003 in its entirety and to begin a new acquisition of these services, including conducting market research as appropriate. This decision is made with full appreciation and recognition of the resources and effort put forth by all

offerors who submitted a proposal in response to this Solicitation.  However, recently passed legislation, "John S. McCain National Defense Authorization Act (NDAA), Section 552, Improvements to Transition Assistance Program (TAP)," mandates significant changes to the TAP, specifically DOL's portion of the program. Accordingly, the requirements on which the Performance Work Statement (PWS) for DOL Solicitation 1605DC-18-R-00003 was based have significantly changed.  The current Solicitation no longer reflects the Government's needs for VETS TAP Program services.

Proceeding with the evaluation of the current proposals would not be appropriate as the evaluators would be assessing those proposals with an eye to current requirements which are no longer the requirements on which offerors based their proposals.  And awarding a contract under Solicitation 1605DC-18-R-00003 would need substantial modifications to enable DOL to comply with the new statute, and these modifications may be beyond the scope of the original Performance Work Statement and so impermissible under the Competition in Contracting Act without full and open competition.  Further, such an award may give rise to protests by disappointed bidders arguing that the submission of proposals and the evaluation of offers was not conducted on a common basis consistent with DOL's true requirements.

At a minimum, DOL would need to revise the solicitation and allow offerors to submit substantially revised proposals.  However, I believe that more than an amendment is appropriate and required.  The Solicitation did not advise offerors of the potential for a change of this magnitude, and such changes would not be reasonably anticipated under the previous statutory scheme.  Moreover, as the result of these changes, the contract value is expected to increase significantly.  It is possible that the anticipated changes to this requirement may materially change the field of competition for this contract, with additional firms or a different set of firms interested in this work.  Therefore, as the DOL Contracting Officer, I have determined that it is in the best interest of the Government to cancel this solicitation and issue a new solicitation that more accurately reflects the changed needs of the VETS TAP program.

The chart below outlines the changes needed to the TAP requirement under the FY 19 NDAA, enacted on August 13, 2018, which will make the new contract materially different from the one awarded under Solicitation 1605DC-18-R-00003.

| **Solicitation 1605DC-18-R-00003 CHANGE FROM:** | **Section 552, FY 2019 NDAA CHANGE TO:** |
|---|---|
| - **(PWS Sec 1.4):** Mandatory 3-day DOLEW and optional 2-day CTTT Workshops | - Mandatory 1-day DOLEW and two different Mandatory 2-day CTTT Workshops (employment and vocational training) |
| - **(PWS Sec 5.1):** Most trainings are 3-day DOLEW; some 2-day CTTT Workshops | - Three separate workshops of different lengths, two of which are mandatory (one 1-day DOLEW and two 2-day CTTT Workshops) |
| - **(PWS Sec 5.3):** Domestic and Overseas TAP Career Technical Training Track Workshops (1 course, strictly optional) | - CTTT Workshops now mandatory, which will INCREASE the number of CTTT workshops delivered, and change from 1 DOL-led CTTT Workshop to 2 (employment and vocational) |
| - **(PWS Sec 5.4.1):** Curriculum Development involves updating and improving existing approach | - May require more hands-on development of new curricula and materials (Leader Guide, Participant Guide, and instructor PowerPoint presentations) for the one day workshop and two, two-day workshops. |
| - (No equivalent task) | - Potentially add new tasks that increase DOL's role in the Transition Assistance Program consistent with the policy reflected in the NDAA. |

In addition to the changes required by the new statute, Solicitation 1605DC-18-R-00003 suffered from defects at the outset that were brought to light by the GAO protests of March 2018. Corrective action has been underway since April in an effort to conduct a reasonable and rational evaluation under the flawed Solicitation. One of the most glaring issues was the failure to clarify what price information offerors needed to submit, which resulted in price proposals containing different data and based on vastly different assumptions.

> This made it difficult to conduct a reasonable price evaluation and identify the proposal that offers the best value to the Government.
>
> Given the defects in the original Solicitation and the fact that the Solicitation no longer reflects the requirements of the principal TAP governing statute, cancelling the Solicitation is in the Government's best interest. Cancelling the Solicitation and re-starting the acquisition from the market research phase will enable DOL to include all of the new requirements and considerations in a new solicitation.

Id. at 474-75.

On August 31, 2018, plaintiff filed the instant bid protest complaint, challenging both the corrective action (Count III) and defendant's decision to cancel the solicitation (Count I). See ECF No. 1 at 13-18, 25-27. In its complaint, plaintiff also alleged that defendant improperly modified the scope of the incumbent contract (Count II), see id. at 18-24, but has since voluntarily dismissed that portion of the complaint. See ECF No. 50 (notice of voluntary dismissal); ECF No. 51 (order dismissing Count II). On September 5, 2018, the DOL terminated plaintiff's 2018 contract for convenience. See id. at 493.

II.    Legal Standards

This court's jurisdiction is based on the Tucker Act, which states, in relevant part, that the Court of Federal Claims has authority:

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement . . . without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1) (2012).

Assuming that the plaintiff has standing to proceed with a bid protest, the court's analysis of a "bid protest proceeds in two steps." Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). The court first determines, pursuant to the Administrative Procedure Act standard of review, whether the "agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law." Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 907-08 (Fed. Cir. 2013) (citing 28 U.S.C. § 1491(b)(4) (adopting the standard of 5 U.S.C. § 706 (2012))). If the court finds that the agency acted in error, the court then must determine whether the error was prejudicial. See Bannum, 404 F.3d at 1351.

7

Given the considerable discretion allowed contracting officers, the standard of review is "highly deferential." Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000). As the Supreme Court has explained, the scope of review under the "arbitrary and capricious" standard is narrow. See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974). "A reviewing court must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment," and "[t]he court is not empowered to substitute its judgment for that of the agency.'" Id. (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)). See also Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1368-69 (Fed. Cir. 2009) (stating that under rational basis review, the court will "sustain an agency action evincing rational reasoning and consideration of relevant factors"). This court cannot sustain an agency action, however, "when the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" Ala. Aircraft Indus., Inc.-Birmingham v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)) (alteration in original).

III.   Analysis

    A.   Applicable Standard of Review for the DOL's Cancellation Decision

As an initial matter, plaintiff appears to labor under significant misconceptions as to the standard of review the court will apply in evaluating the DOL's cancellation decision. Throughout its argument that the contracting officer improperly cancelled the solicitation, plaintiff mischaracterizes the relevant standard. Plaintiff contends, for example, that:

(1)   any changes required by the 2019 NDAA would not be implemented for "some time," and that "[e]ven if significant changes must subsequently occur, completing the Solicitation competition and using the lawful IDIQ contract in the interim presents a vastly superior[] approach," ECF No. 30-2 at 25;

(2)   the 2019 NDAA does not "[r]equire" the DOL to cancel the solicitation, id. at 26;

(3)   the changes included in the 2019 NDAA "do not constitute cardinal changes to the Solicitation such that an entirely new procurement is warranted," id. at 27; and

(4)     defendant should have chosen to modify the solicitation rather than cancel it because modification was the "less drastic, more competition-friendly" alternative, id. at 30.

Contrary to plaintiff's assertions, the contracting officer is not required to select an objectively superior approach or a less drastic, more competition-friendly alternative. Moreover, the agency is permitted to cancel a solicitation even absent absolute necessity or cardinal changes. Cancellation decisions are governed by the general bid protest standard that calls on the court to determine whether the "agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law." Glenn Defense, 720 F.3d at 907-08; Croman Corp. v. United States, 724 F.3d 1357 (Fed. Cir. 2013) (holding that an agency's decision to cancel portions of a solicitation was rational due to budget constraints).

Plaintiff also attempts to moderate the level of discretion that contracting officers are permitted in making cancellation decisions, stating that "although agencies have some discretion to cancel a solicitation where their needs change substantially, this discretion is not unfettered." ECF No. 30-2 at 23 (emphasis added). In its reply in support of its motion for judgment on the administrative record, plaintiff attempts to buttress this position by reviewing a litany of regulations that it argues circumscribe an agency's ability to cancel a solicitation, essentially reading a variety of additional factors into the standard. See ECF No. 42 at 17-20 (citing Federal Acquisition Regulation (FAR) 15.206(a) and (e), FAR 33.102(b), FAR 2919.201(a), and FAR 2919.202).[2]

---

[2]     The court notes that in making this argument, plaintiff frames its reference to these regulations as part of its effort to define the boundaries of agency discretion, not as grounds for a separate argument that the contracting officer's decision was contrary to law. See ECF No. 42 at 17-20. Plaintiff concludes its discussion of these provisions with the following statement: "As such, the FAR makes clear that an agency's decision to cancel a solicitation is not a matter over which an agency has unfettered discretion and such a cancellation necessarily lacks a 'rational basis' where the agency, among other failings, did not properly consider at the time of the cancellation decision" a list of factors that plaintiff believes are relevant. ECF No. 42 at 20.

Defendant responds in detail to plaintiff's invocation of these regulations and explains its position that the contracting officer did not violate the cited provisions. See ECF No. 46 at 16-23. While the court appreciates defendant's thoroughness, the court will address plaintiff's argument only in the frame presented. Because plaintiff did not ask the court to consider whether a violation of any of these regulations could itself form the basis for overturning the contracting officer's decision, the matter has not been fully briefed and presented to the court, and is not an appropriate subject for a legal conclusion in this opinion.


While it is true that an agency's discretion in making contracting decisions is not unfettered, contracting officers are allowed more than "some discretion." In fact, the standard of review is "highly deferential." Advanced Data Concepts, 216 F.3d at 1058. And as the Federal Circuit recently confirmed, there is no heightened standard that applies in the context of reviewing agency procurement decisions. See Dell Fed. Sys., L.P. v. United States, 906 F.3d 982, 991-94 (Fed. Cir. 2018) (holding that the Court of Federal Claims improperly applied a standard that was more exacting than the rationality test applicable to the review of procurement decisions).

Keeping the proper standard firmly in view, the court considers whether the contracting officer abused her discretion or failed to articulate a rational basis for the cancellation decision.

B.   The Cancellation Decision Was Proper

As the court reproduced above, the contracting officer provided a detailed explanation of her decision to cancel the solicitation. See ECF No. 20-6 at 474-75. Plaintiff claims that her explanation is infirm for two reasons: (1) "the record does not support the Contracting Officer's cancellation decision," because the "2019 NDAA changes do not constitute cardinal changes that support cancellation of the Solicitation," ECF No. 30-2 at 24; and, (2) "[e]ven if the significant changes must subsequently occur, completing the Solicitation competition and using the lawful IDIQ contract in the interim presents a vastly superior[] approach to the circumstance," id. at 25.

First, plaintiff argues that the IDIQ nature of the contract obviates defendant's concern with any changes required by the 2019 NDAA because such contracts "necessarily plan[] for variations in the TAP requirements." Id. at 26. In plaintiff's judgment, the 2019 NDAA requirements should simply have been incorporated into the original solicitation by way of a contract modification. Id. Plaintiff disagrees with the contracting officer's assessment of the materiality of the changes, characterizing them as not "cardinal changes" and "limited alterations" that do not justify cancellation. Id. at 27. Plaintiff's argument on this point fails, however, because the contracting officer is not required to prove the cardinal materiality of changes in order to justify cancellation. As noted above, she is only required to provide a rational basis for her decision.

Here, the contracting officer has met this standard. Her eight-page memorandum was detailed and thorough. See ECF No. 20-6 at 469-76. It describes the solicitation's requirements and history, outlines the pertinent changes made by the 2019 NDAA, explains the reasoning behind her cancellation decision, and sets forth a general approach for a new acquisition plan. See id. Specifically, based on a review of the new law and a comparison to the solicitation, she concludes that the 2019 NDAA makes material changes to the solicitation requirements. Thus, proceeding with the evaluation, in her judgment, "would not be appropriate as the evaluators would be assessing those

proposals with an eye to current requirements which are no longer the requirements on which offerors based their proposals." ECF No. 20-6 at 474. Notably, the contracting officer raises this concern not only because the changes may complicate the evaluation process, but also because an award based on the initial solicitation may result in the agency having to defend protests from "disappointed bidders arguing that the submission of proposals and the evaluation of offers was not conducted on a common basis consistent with DOL's true requirements." Id.

The contracting officer also assessed that the required modifications "may be beyond the scope of the original Performance Work Statement and so impermissible under the Competition in Contracting Act without full and open competition," and that the changes required as a result of the 2019 NDAA "may materially change the field of competition for this contract, with additional firms or a different set of firms interested in this work." Id. The memorandum then outlined, in chart form, key differences between the solicitation and the new requirements. See id. In the court's view, this analysis is comprehensive, well-considered, and logical.[3] The contracting officer conducted an adequate analysis of both the changed program requirements and the effect that the failure to issue a new solicitation might have on the contracting process.

In addition to its argument that the nature of the changes do not justify cancellation, plaintiff also argues that the contracting officer's decision is irrational because it failed to include specific enough information about "how long [defendant] requires to determine its new needs, how DOL will assess its new needs, when DOL will issue the new solicitation, how long DOL requires to compete the new solicitation and address any protests, or other pertinent information to support cancellation." ECF No. 30-2 at 30. Plaintiff relies on a recent decision from this court, FMS Investment Corp. v. United States, 139 Fed. Cl. 221 (2018), in making this argument.

---

[3] Beyond the changes required by the 2019 NDAA, the contracting officer identifies, as an additional factor that militated in favor of cancellation, the defects in the solicitation that "were brought to light by the GAO protests." ECF No. 20-6 at 475. Plaintiff accuses the contracting officer of using defects in the solicitation as a pretext for cancellation in order to avoid confronting the allegedly improper basis for her decision to take corrective action. See ECF No. 30-2 at 32-34. The court will not address this accusation in detail for two reasons. First, in substance, it attacks the corrective action, not the cancellation decision, a challenge the court must reject. See infra section III.C. of this opinion. In addition, the cancellation decision does not depend on the existence of defects in the original solicitation, and therefore, the court need not consider this argument in order to find that the contracting officer's action was proper.

In FMS, the government issued a solicitation for the "collection and administration of defaulted student loans." 139 Fed. Cl. at 223. After a complicated initial round of awards, protests, and solicitation cancellation, the government issued a second solicitation, and made two contract awards. See id. at 223-24. Twenty disappointed bidders filed protests with this court as a result. See id. The government indicated to the court that it likely would not continue to defend the protests, but before updating the court any further, it cancelled the solicitation. See id. The cancellation notice announced the government's "new vision to utilize 'enhanced servicer(s)' to administer student debt," and as such, the notice stated that the government would no longer require the services initially solicited. Id. The cancellation decision expressly relied on the expected volume of defaulted borrowers when concluding that the initially solicited services would not be needed. See id. The FMS plaintiffs filed a separate action to challenge the cancellation decision. See id.

As plaintiff in this case explained, the court ruled in the FMS plaintiffs' favor, finding that the cancellation decision was arbitrary. That court, however, based its conclusion on a variety of factors that are not present in the instant case. First, the FMS plaintiffs based their argument that the cancellation was irrational on their contention that the administrative record in that case did not support the cancellation decision. See id. at 225. In evaluating this argument, the court noted that the administrative record on which the government relied was "scant," "just 33 pages long," and "appears slipshod." Id. Here, the administrative record exceeds thirty-eight hundred pages, and provides exhaustive detail of the procurement process. See ECF No. 20-1 through 20-6. The court in FMS also emphasized the fact that the agency's cancellation notice explicitly relied on the expected volume of defaulted borrowers, but that those numbers were not included in the administrative record. See 139 Fed. Cl. at 226. Plaintiff has pointed to no such infirmity in this case.

More generally, the changes at issue in FMS are fundamentally of a different nature from the changes at issue here. In FMS, the agency appears to have been struck by a "new vision" for administering defaulted debt. Id. at 224. Quite to the contrary in this case, a newly passed statute directly impacted the requirements of the DOL programs which were explicitly the subject of the solicitation. Put another way, the DOL did not, on a whim, change the requirements of the TAP programs—the changes at issue were imposed on it by the legislature. Thus, it would be illogical to require the agency to provide a reason for the changes in the way that the FMS court required the government to provide "a 'reasoned analysis' for [its] policy change." Id. at 226.

After considering both the full range of plaintiff's arguments and the authority cited in support of those arguments, it is clear to the court that the crux of plaintiff's complaint is its basic disagreement with the contracting officer's judgment that the 2019 NDAA changes are material enough to warrant cancellation. The court, however, "'is not empowered to substitute its judgment for that of the agency.'" Bowman, 419 U.S. at 285

(quoting Citizens to Preserve Overton Park, 401 U.S. at 416). Because the court has concluded that the contracting officer's decision was rational, it must sustain that decision—even if the court might have come to a different conclusion.

### C. The Court Rejects Plaintiff's Corrective Action Challenge

In the third count of the complaint, plaintiff challenges the agency's March 2018 decision to take corrective action following the GAO protests. See ECF No. 1 at 25-27 (challenging the corrective action as arbitrary, capricious, irrational or contrary to law). Plaintiff now takes the position in its supplemental brief that the court must decide whether the corrective action decision was proper, irrespective of its conclusion as to the propriety of the contracting officer's decision to cancel the solicitation. See ECF No. 56 at 2. The court disagrees.

Plaintiff "requests that the Court declare DOL's corrective action decision unlawful and restore the contract to Inverness (i.e., restore the status quo as of March 2018), or, in the alternative, complete corrective action in a timely manner (within 60 days)." Id. at 2-3. Because the court has already determined that the cancellation was proper, there is no contract to restore. See, e.g., DCMS-ISA, Inc. v. United States, 84 Fed. Cl. 501, 517 (2008) ("having concluded that cancellation of the solicitation was not improper, the court has no occasion to reach the plaintiffs' arguments that the agency should have taken additional or different steps in evaluating the proposals—the proper cancellation essentially mooted those claims"); CW Gov't Travel v. United States, 46 Fed. Cl. 554, 559 (2000) ("There is no other injunctive or declaratory relief that this court could award under this solicitation, precisely because it was canceled."); CCL Serv. Corp. v. United States, 43 Fed. Cl. 680, 690 (1999) ("In light of [the agency's] decision to cancel the solicitation, any decision on the merits of the award would not affect plaintiffs in any respect—none of the plaintiffs will be eligible for award, as no award can be made under a canceled solicitation."). Plaintiff's alternative request that the court direct the DOL to continue with the corrective action falters on the same ground. For these reason, plaintiff's challenge to the corrective action decision must fail.

### D. Plaintiff's Argument Relating to the Method of Termination Is Cursory and Untimely

In a footnote to the argument in its supplemental brief, plaintiff claims that "[i]f the Court finds the award to Inverness lawful under Count III, then DOL would need to proceed with a termination for convenience under the FAR if it wished to proceed with a new procurement—an entirely different process than solicitation cancellation." ECF No. 56 at 3 n.4. Plaintiff does not identify the regulations that it argues defendant should have followed, and the court will neither supply the substance of plaintiff's argument nor will it project defendant's or intervenor-defendant's response.

13

The court notes that plaintiff's decision to raise this argument at such a late stage of briefing is problematic. Plaintiff did not oppose the contracting officer's decision to take corrective action until after the solicitation was cancelled on August 23, 2018, see ECF No. 1 (complaint filed on August 31, 2018), even though the corrective action decision was announced five months earlier, on March 30, 2018, see ECF No. 20-6 at 176-77. In the intervening five months, plaintiff communicated repeatedly with the DOL. In its brief in support of its motion for judgment on the administrative record, plaintiff outlines those contacts:

> 19. Inverness first contacted DOL regarding the status of corrective action on May 20, 2018. The contract specialist replied: "DOL will provide updates as they become available. There are no updates to announce at this time." (Tab 56 at AR 3776.) Then, on or around June 29, 2018—over two months after DOL announced its intent to take corrective action—counsel for Inverness left a telephone voice message for Savannah Wilson, procurement counsel for DOL, inquiring about the []corrective action status. (Tab 52 at AR 3656.) In an email reply, Ms. Wilson stated: "I cannot provide you with any details about the status of the Department's corrective action in response to the protests of AFX and KOVA Global. I can assure you that this procurement remains a priority for the Contracting Officer, Rachel Johnson, and she will be in touch with your client as soon as the reevaluation is complete." (Id.)
>
> 20. Counsel for Inverness again contacted DOL on August 15, 2018 regarding: (i) the pace of corrective action; (ii) GBX's improper attempts to remove Inverness from the incumbent contract and the need to maintain the status quo during the corrective action period; (iii) DOL's improper modification to the 2012 GBX Contract resulting in the one-year sole source bridge contract to GBX; and (iv) GBX's ineligibility for award of the bridge contract as a large business, as well as GBX's affiliation with AFX under applicable Small Business Administration ("SBA") regulations. (Tab 55.) During subsequent exchanges, DOL procurement counsel did not mention Solicitation cancellation.

ECF No. 30-2 at 20-21. Despite the fact that plaintiff complained to the DOL on several occasions that the corrective action was not being completed quickly enough, it apparently did not avail itself of those same opportunities to communicate its concerns about the propriety of the corrective action decision itself, even informally.

Plaintiff's delay in raising potentially relevant arguments foreclosed any opportunity the DOL may have had to respond in a meaningful way to plaintiff's complaints about the corrective action decision. Plaintiff's delay has now impeded the court's ability to evaluate its argument that the DOL should have chosen "an entirely

different process than solicitation cancellation." ECF No. 56 at 3 n.4. Plaintiff's cursory argument in this regard has been raised too late in the briefing process. As such, the argument is waived.

IV.   Conclusion

For the foregoing reasons, plaintiff's motion for judgment on the administrative record, ECF No. 30, is **DENIED**; defendant's cross-motion for judgment on the administrative record, ECF No. 36, is **GRANTED**; and, intervenor-defendant's cross-motion for judgment on the administrative record, ECF No. 39, is **GRANTED**.

The clerk's office is directed to **ENTER** final judgment for defendant and intervenor-defendant, **DISMISSING** the remaining counts (I and III) of plaintiff's complaint, with prejudice. Each party shall bear its own costs.

On or before **January 18, 2019**, the parties shall **CONFER** and **FILE** a **Proposed Redacted Version** of this opinion, with any competition-sensitive or otherwise protectable information blacked out.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge